UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | ) | No. 03 C 5967 |
| GARVEY MARINE, INC., a | ) | Judge Joan H. Lefkow |
| Corporation, For Exoneration | ) | |
| From, or | ) | |
| Limitation of, Liability. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 10, 2003, Garvey Marine, Inc. ("Garvey Marine"), was operating a tugboat pushing two barges on the Calumet-Sag Channel. As the tugboat approached the Division Street Bridge located in Blue Island, Illinois, it struck a bucket suspended from an under-bridge boom owned by Equipment Rental Company ("ERC") and leased to Collins Engineers, Inc. ("Collins"). Collins' employees, Jeremy Koonce and Evan Buckhouse, were inside of the bucket at the time of impact. Mr. Buckhouse died as a result of the accident and Mr. Koonce has claimed personal injuries.

Following this incident, ERC and Christine Buckhouse, as Administrator of the Estate of Evan Buckhouse, filed suit against Garvey Marine and other parties in the Circuit Court of Cook County, Illinois. Before filing an answer in the state court suit, Garvey Marine filed suit under this court's admiralty jurisdiction, seeking "Exoneration From, or Limitation of, Liability" under the Limitation of Vessel Owner's Liability Act, 46 U.S.C. Sections 181-195, and the various statutes, rules, and regulations relating thereto. ERC, Buckhouse, and Koonce then filed claims in this court for damages against Garvey Marine. Thereafter, Garvey Marine filed an Amended

1

Third-Party Complaint asserting claims for indemnity and contribution against the City of Blue Island ("Blue Island"), Robinson Engineering, Ltd. ("Robinson"), Collins, ERC, Buckhouse, and Koonce. Before the court is Robinson's motion for summary judgment. For the reasons set forth below, Robinson's motion for summary judgment is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

I.  **FACTS**

A.  **Robinson is Hired to Participate in the Rehabilitation of the Bridge**

The Division Street and Chatham Street Bridges are structures that span portions of the Calumet-Sag Channel and are owned by Blue Island, Illinois. Robinson Local Rule 56.1 Statement of Material Facts ("RSF") ¶¶ 12-13. Sometime in or around March 2002, Blue Island learned that its request for federal funding for the rehabilitation of the Division Street and Chatham Street Bridges had been approved. *Id.* at ¶ 14. As a result, Blue Island entered into a "Preliminary Engineering Services Agreement" (the "Agreement") with Robinson for the rehabilitation of the Division Street Bridge (the "Bridge"). *Id.* at ¶ 14.

Under the Agreement, Robinson agreed "to perform or be responsible for the performance, in accordance with state approved design standards and policies, of engineering services for [Blue Island]" for the rehabilitation of the Bridge. Buckhouse Local Rule 56.1 Statement of Material Facts ("BSF") ¶ 4. Robinson further agreed to (1) make such detailed surveys as are necessary for the planning and design of the project; (2) make stream and flood plain and hydraulic surveys and gather both existing bridge upstream and downstream high water data and flood flow histories; (3) prepare applications for U.S. Army Corps of Engineers Permit, Illinois Department of Natural Resources Office of Water Resources Permit and Illinois Environmental Protection Agency; (4) prepare Bridge Condition Report and Preliminary Bridge Design and Hydraulic Report; (5) prepare the necessary environmental and planning documents; and (6) prepare preliminary roadway and drainage structure plans. *Id.* at ¶ 5. The Agreement provided that Robinson could subcontract its services with the written consent of Blue Island,

3

though the Agreement further provided that "the consent to sublet, assign or otherwise transfer any portion of the services to be furnished by the ENGINEER shall not be construed to relieve the ENGINEER of any responsibility for the fulfillment of this agreement." *Id.* at ¶ 7.

The first phase of the rehabilitation of the Bridge involved Robinson's preparation of an engineering study that set forth the condition of the structure, and with recommendations for preparing the design plans and specifications for rehabilitating the structure. RSF ¶ 17. Before Robinson could prepare that study, however, a fracture critical inspection (the "Inspection") first had to be performed. *Id.* at ¶ 22-23.

The Inspection is performed to determine the structural integrity of a bridge, including identifying any areas of fatigue in the structural components of a bridge. *Id.* at ¶ 24. Typically, an Inspection is not included in the funding for the first phase of the rehabilitation of a bridge. Robinson, however, was able to obtain funding for Blue Island to pay for the Inspection of the Bridge as part of the first phase of the rehabilitation project. *Id.* at ¶ 22-23.

### B. Collins Hired to Perform the Inspection of the Bridge

Robinson does not typically perform Inspections, but, rather, retains a subcontractor that has experience in performing such inspections. *Id.* at ¶ 28-29. Thus, as it had in 1989, 1991, 1993 and 2000, Robinson retained Collins to conduct the Inspection of the Bridge, as well as to prepare the bridge condition report. *Id.* at ¶ 31.

The parties' relationship was governed by a written proposal prepared by Collins setting forth the scope of the services that Collins had agreed to provide. *Id.* at ¶ 32. In the proposal, Collins agreed to conduct the Inspection in "full compliance with the Current Manual of

4

Maintenance Inspection of Bridges (AASHTO), Structure Information of Fracture Critical Bridge Members (FHWA), the Guide Specifications for Fracture Critical Non-Redundant Steel Bridge Members (AASHTO), and OSHA requirements." *Id.* at ¶ 34.

In December 2002, Collins' proposal was approved as part of the first phase of the rehabilitation of the Bridge. *Id.* at ¶ 35-36.

### C. Robinson Communicates with Blue Island and Collins Regarding the Inspection of the Bridge

Shortly before Collins was set to begin the Inspection of the Bridge, Robinson informed Blue Island of the schedule for the Bridge Inspection, including which days the inspection would be "overhead" and which days the Inspection would be "underdeck." Garvey Local Rule 56.1 Statement of Materials Facts ("GSF") at ¶ 32. Robinson also requested that Blue Island "notify the proper emergency services with this information." *Id.* at ¶ 33. Robinson did not specify which "emergency services" Blue Island was to notify. *Id.* at ¶ 34. As a representative of Blue Island, Robinson instructed Collins not to close both the Bridge and the CSB at the same time during the Inspection. *Id.* at ¶ 37.

### D. Collins Performed the Inspection of the Bridge

Collins assigned three of its employees to perform the Inspection of the Bridge: Dan Stromberg was the project manager for Collins; Evan Buckhouse was the assistant project manager/lead structural engineer in charge of the inspections in the field; and Jeremy Koonce was project engineer/assistant inspector engineer out in the field. RSF at ¶ 40-42.

On April 10, 2003 at around 7:20 a.m., a tug boat, the M/V Julie White began moving down the Calumet-Sag Channel with a tow of three empty barges on its way to Lemont, Illinois.

*Id.* at ¶ 84. As the M/V Julie White approached the Bridge, Buckhouse and Koonce were approximately 30 minutes into their inspection of the underside of the Bridge. *Id.* at ¶ 85. As the M/V Julie White and its tow were approaching the Bridge, Captain Ballard, the Captain of the M/V Julie White, observed a truck located on the Bridge. *Id.* at ¶ 89. When the front of the tow was approximately 150 to 175 feet from the Bridge, Captain Ballard observed a boom moving in a downward direction from the Bridge. *Id.* at ¶ 91. After observing the boom, Captain Ballard went full astern with his boat and hit the general alarm for his crew. *Id.* at ¶ 92. Approximately seven to eight seconds later, the barge being pushed by the M/V Julie White struck the arm of the boom that was attached to the basket that Buckhouse and Koonce were in and the boom was dragged over the top cover of the barge. *Id.* at ¶ 93. As the barge began moving in reverse, Koonce and Buckhouse unhooked their lanyards and "popped out" of the basket into the Calumet-Sag Channel. *Id.* at ¶ 98. Evan Buckhouse was unable to swim ashore and drowned in the Calumet-Sag Channel. Jeremy Koonce swam to shore. *Id.* at ¶ 99.

## II. DISCUSSION

ERC, Christine Buckhouse, and Jeremy Koonce (collectively, "Claimants"), along with Garvey Marine (together, "Respondents,") contend that Robinson was negligent in (a) unlawfully and unreasonably obstructing the navigable channel of the Calumet-Sag Channel; (b) unlawfully and unreasonably altering the clearance of the Bridge; (c) unlawfully and unreasonably altering the navigation conditions on the Calumet-Sag Channel at the location of the Bridge; (d) creating a hazard to navigation; (e) violating the Rivers and Harbors Act (33 U.S.C. § 403); (f) failing to provide notification or warning of the inspection of the Bridge, including but not limited to

failing to notify the United States Coast Guard that the inspection was to take place; (g) failing to provide sufficient training, instruction, equipment (including but not limited to life jackets and a safety skiff), personnel or oversight for the inspection; (h) failing to properly monitor traffic, including but not limited to failure to use marine radios to communicate with vessel traffic, (i) failing to have an appropriate plan or procedure in place to avoid contact with vessels; and (j) otherwise failing to properly conduct the inspection. See RSF at ¶ 107.

Since Garvey Marine has invoked this court's admiralty jurisdiction, substantive admiralty law applies. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338 (3d Cir. 1996). Thus, to succeed on their claim of negligence, Respondents must satisfy all of the elements of a negligence claim in admiralty. The elements, "which are essentially the same as land based negligence under the common law, are (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) the breach of that duty of care; (3) a causal connection between the offending conduct and the resulting injury, which is called 'proximate cause'; and (4) actual loss, injury or damage suffered by the plaintiff." *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001).

In maritime cases, as in land-based negligence cases, the determination of a legal duty is a question of law. *Theriot v. United States*, 245 F.3d 388 (5th Cir. 1998). In determining the existence of a duty, "federal courts may, and often do, look to state statutory law and to precepts of the common law which they 'borrow' and apply as the federal admiralty rule." *Sutton v. Earles*, 26 F.3d 903, 912 (9th Cir. 1994). Since the parties do not cite and the court is unable to find a federal case addressing the scope of an engineer's duty to non-seafarers, the court refers to

Illinois' common law for guidance in reaching its decision.

Robinson contends that it owed no duty of care to Garvey or the Claimants because it never undertook, contractually or otherwise, to provide Collins' employees with a safe working environment and it did not retain any control over the means, method, or manner in which Collins performed the Inspection of the Bridge.

Respondents, on the other hand, argue that since Robinson had the primary and direct responsibility for the rehabilitation of the Bridge, including the Inspection, it had a non-delegable duty to remain responsible for all of the work performed under the contract, including work performed by its subcontractors. Respondents claim that this responsibility included an obligation to supervise Collins' inspection of the Bridge. Alternatively, Respondents contend that Robinson assumed a duty to provide Claimants with a safe working environment by voluntarily undertaking the responsibility of controlling traffic on and around the Bridge during Collins' inspection.

### A. A Genuine Issue of Fact Exists as to Whether Robinson Had Direct and Primary Responsibility for the Inspection of the Bridge

As an initial matter, it is unclear whether Robinson had direct and primary responsibility for the Inspection of the Bridge. The fact that the Inspection is typically performed prior to, and is not included in the funding for, the first phase of a bridge rehabilitation, suggests that Robinson's Agreement with Blue Island was independent of Robinson's contract with Collins. But there is evidence that Robinson "rolled" the Collins contract into its Agreement with Blue Island. The fact that Robinson and not Blue Island retained Collins further suggests that the Inspection was indeed Robinson's responsibility. Thus, if this issue were material, the court

would deny Robinson's motion for summary judgment on the basis of the existence of a genuine issue of material fact. The issue is not material, however, because the court finds that even if Robinson had direct and primary responsibility for the rehabilitation and Inspection of the Bridge, its responsibilities were delegable.

### B. Robinson Did Not Retain or Exercise Control Over Collins' Inspection of the Division Street Bridge

Respondents attempt to derive a duty owed by Robinson to Claimants from Robinson's contractual promises to Blue Island to comply with all applicable laws in the performance of its services under the Agreement and to remain responsible for all work performed by its subcontractors. Respondents, however, fail to cite any authority in support of this argument, or, any authority explaining why they should benefit from Robinson's contract with a third-party.

Notwithstanding this failure to cite to relevant authority, Respondents' argument fails because it is unpersuasive. A contractor is not liable for injuries or damage caused by the negligence of its subcontractor, unless it can be shown that the contractor retained or exercised control over the subcontractor's work. *See Ross v. Dae Julie, Inc.*, 341 Ill. App. 3d 1065, 1070, 793 N.E.2d 68, 72, 275 Ill.Dec. 588, 592 (Ill. App. Ct. 2003) (manufacturing plant owner did not owe duty of care to independent contractor's employee because independent contractor was free to perform his work in his own way). *See also Amann v. City of Tacoma*, 16 P.2d 601, 606, 170 Wash. 296, 308 (Wash. 1932) (stating that "the same rule, of course, applies as between contractor and subcontractor as does between master, or owner, and the principal contractor" where a plaintiff seeks to hold a contractor liable for injuries cause by the negligence of his subcontractor); Restatement (Second) of Torts § 414 (1965) ("One who entrusts work to an

independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."). Comment c to Section 414 establishes the parameters of the "retention of control" concept:

> "It is not enough that he has merely a general right to order the work stopped or resumed, to inspect the progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way."

Restatement (Second) of Torts § 414, Comment c, at 388 (1965). *See also Hines v. British Steel Corp.*, 907 F.2d 726, 730 (7th Cir. 1990) (applying Comment c to Section 414 in an admiralty case).

In this case, Robinson and Collins' course of conduct demonstrates that Robinson had no control over the means, manner, or method of Collins' inspection of the Bridge. Indeed, Robinson was not involved in nor did it oversee any aspect of the physical inspection of the Bridge. Further, Collins did not expect or request that Robinson assist in any manner in the physical inspection of the Bridge.

### C. Robinson Was Not Required to Retain or Exercise Control Over Collins' Inspection of the Bridge Because of its Agreement with Blue Island

Contrary to Respondents' argument, Robinson's Agreement with Blue Island did not require that Robinson be involved in Collins' inspection of the Bridge. Notably, the Agreement did not explicitly impose on Robinson a duty to supervise the work of its subcontractors. More importantly, the circumstances surrounding Robinson's retention of Collins to perform the

Inspection confirm that Robinson's Agreement with Blue Island did not contemplate that Robinson would supervise Collins' work. From the outset, Blue Island knew that Robinson was not qualified to conduct the Inspection and that Collins would conduct the Inspection instead. Thus, Blue Island knew at the time the parties' entered into the Agreement that Robinson would be unable to supervise Collins' Inspection. As such, the parties could not have understood the Agreement to impose on Robinson the virtually unlimited supervisory responsibilities suggested by Respondents.

Moreover, any duty to Claimants created by Robinson's contractual promise to comply with all applicable laws in the performance of its services under the Agreement was discharged by Robinson's inclusion of a similar provision in its agreement with Collins. To hold otherwise would require Robinson to possess the legal and technical expertise necessary to ensure that Collins' inspection was in accordance with the full range of applicable laws. As such, a contrary rule would effectively defeat Robinson's purpose in hiring Collins to perform the inspection.[1]

### D. Robinson Was Not Required to Retain or Exercise Control Over Collins' Inspection of the Bridge Because of its Long-Time Status as Blue Island's Municipal Engineer

Respondents also contend that Robinson's status as Blue Island's municipal engineer gave rise to a duty to Claimants. Respondents' argument fails because, if accepted, it would extend Robinson's supervisory responsibilities to any contractor retained by Blue Island to perform engineering services, regardless of whether Robinson controlled the contractor's means

---

[1] Robinson's reliance on its contract with Collins to fulfill its contractual promises to Blue Island was reasonable because Robinson had no reason to believe that Collins' method of inspecting the Bridge was dangerous or unlawful. Indeed, Collins had performed the Inspection of the Bridge without incident on at least four prior occasions.

or method of work. Respondents do not cite and the court is unable to find any authority to support imposition of such an onerous burden.

### E. Robinson Did Not Assume Responsibility for Claimants and Collins' Inspection of the Bridge

There is also no basis to find that Robinson assumed a duty to provide Claimants with a safe working environment or to notify the Coast Guard that the Bridge Inspection was taking place. Robinson informed Blue Island of Collins' work schedule, requested that barricades be delivered to the work site, and advised Blue Island to notify emergency personnel of the Bridge closures. But Robinson undertook these notification responsibilities at the direction of Collins. As such, Robinson merely assumed responsibility for transmitting the information, and there is no allegation or evidence that they performed that duty negligently.

Even if Robinson gratuitously advised Blue Island to notify emergency personnel, Robinson was not negligent in failing to specify that Blue Island needed to notify the Coast Guard. Robinson advised Blue Island to notify emergency personnel so that they would not be delayed in responding to an emergency. There was no equivalent justification for notifying the Coast Guard, and thus, Robinson did not assume a duty to advise Blue Island to notify the Coast Guard.

### F. The Existence of a Duty of Care is a Question of Law for the Court

Finally, Garvey Marine contends that a dispute of material fact exists because Garvey Marine's experts have testified that Robinson had a duty to ensure that Collins performed its work in compliance with engineering practices and national standards. It is well settled that the determination of whether a legal duty exists is a question of law reserved exclusively for the

12

court. *See Theriot v. United States*, 245 F.3d 388, 394-395 (5th Cir. 1988) (finding that whether a duty exists for purposes of a negligence claim under maritime law is a question of law to be decided by the court); *See also Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008 (7th Cir. 2000) (under Illinois law, the existence of a duty is a question of law for the court). As such, Garvey Marine cannot rely on its experts' testimony to defeat summary judgment.

## CONCLUSION

In light of the foregoing, Robinson's motion for summary judgment [# 190] is granted. Robinson's motion to strike [#311] is denied as moot.

Dated: March 28, 2006

Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge

13